**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANA McMASTER, | 1:04-CV-06453-AWI-GSA (PC) |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS TO DISMISS ACTION (Doc.12) |
| JAMES A. YATES, et. al., | |
| Defendants. | |

Dana McMaster ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action filed pursuant to 42 U.S.C. § 1983. Plaintiff filed his original complaint on October 26, 2004, alleging a violation of his Eighth Amendment right to medical care. The Court issued Findings and Recommendations to Dismiss the Action which Plaintiff objected to and was subsequently given opportunity to file an amended complaint. On August 7, 2006, Plaintiff filed his first amended complaint.

**A.  SCREENING REQUIREMENT**

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall

1  dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a
2  claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).
3        A complaint, or portion thereof, should only be dismissed for failure to state a claim upon
4  which relief may be granted if it appears beyond doubt that Plaintiff can prove no set of facts in
5  support of the claim or claims that would entitle him to relief.  See Hishon v. King & Spalding,
6  467 U.S. 69, 73 (1984), *citing* Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Palmer v.
7  Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981).  In reviewing a
8  complaint under this standard, the court must accept as true the allegations of the complaint in
9  question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), construe the
10 pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor.
11 Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

12 **B.  SUMMARY OF FIRST AMENDED COMPLAINT**

13       Plaintiff is a prisoner at Pleasant Valley State Prison (PVSP) – where the acts he
14 complains of occurred.
15       Plaintiff names the following as defendants: Registered Nurses Sheroan and Roberts;
16 Physicians K. Nicholes, Oritz, Salazar, and J.C. Thomas; Medical Technician Assistants
17 Sedwick, Hoyt, Lunn, and Erickson; Senior Technician, Combs; Health Care Manager, Bendon;
18 Appeals Coordinator, D. Sylvester; Lieutenant R. Viallarreal; and Unknown/Unnamed medical
19 personal at PVSP.
20       Plaintiff alleges that on Friday, January 2, 2004, he suffered an injury to his ankle which
21 he assumed to be minor.  However, early the next morning (Saturday), Plaintiff experienced pain
22 and swelling in his ankle and had his cellmate assist him to the facility medical clinic where he
23 informed MTA Sedwick of his injury and requested emergency access to a physician.  Sedwick
24 allegedly advised that Plaintiff could not see a physician until Monday.
25       On Monday, January 4, 2004, Plaintiff was allegedly seen by Dr. Nicholes who
26 prescribed pain medication, authorized crutches, scheduled an x-ray, and confined Plaintiff to his
27 living quarters for a day.  On January 5, 2004, he again saw Dr. Nicholes for a follow-up exam.
28 However, he alleges that, despite Dr. Nicholes conducting a personal interview regarding the

cause of his complaints, Dr. Nicholes ignored Plaintiff's concerns that he had difficulty sleeping, his ankle was still swollen, and that use of the crutches was difficult.

On January 6, 2004, Plaintiff was allegedly seen by Dr. Thomas, who noted a small "avulsion fracture" of Plaintiff's left ankle. Plaintiff does not allege what, if any, changes in treatment Dr. Thomas recommended.

On January 7, 2004, Plaintiff was allegedly seen by Dr. Ortiz who entered a note in Plaintiff's medical chart that the x-rays taken two days prior were negative, and ordered Plaintiff confined to his cell five more days, continued use of crutches, continued his prescription for Vicodin, application of an Ace bandage for five days, elevation of the leg, and follow up exam in two days. Plaintiff alleges Dr. Ortiz possessed knowledge that his injury warranted a bone specialist and neurologist, and yet refused to make the necessary referrals.

On March 5, 2004, Plaintiff was allegedly seen by Dr. Salazar. Dr. Salazar responded to Plaintiff's inquiry, that the results of his January 2nd and January 6th x-rays were negative. Plaintiff alleges that Dr. Salazar knew that his records revealed an ankle fracture. Plaintiff alleges that Dr. Salazar and Dr. Ortiz covered up the fact that his ankle was fractured and both failed to refer him to any outside specialist.

On March 23, 2004, Lt. Villarreal and Technician Combs issued Plaintiff a priority pass to obtain an x-ray. Dr. Thomas examined the x-rays and opined that the avulsion fracture he previously identified was stable and that Plaintiff had an avulsion fracture off of the posterior malleolus which was not appreciated on the earlier study. Plaintiff alleges that this finding by Dr. Thomas automatically warranted immediate consultation with specialists.

Plaintiff alleges that Sacks (who is not named as a defendant), Ortiz, Salazar, and Bendon intentionally concealed information in his medical chart so as to delay his medical treatment.

On April 1, 2004, Lt. Villarreal and MTA Hoyt issued a priority pass for a doctor's appointment such that he was seen by an unknown MTA and referred to the emergency room to be seen by Dr. Nicholes. Plaintiff alleges that Dr. Nicholes intentionally delayed his medical care in violation of his federal constitutional right of access to medical care.

On April 5, 2004, Dr. Nicholes met with Plaintiff to inform him that the March 24, 2004

radiology report could not be found such that he would have to retrieve the actual films. Plaintiff argues that this is evidence of Dr. Nicholes intentional delay regarding his serious medical needs. Plaintiff further alleges that, after Dr. Nicholes retrieved the x-rays confirming Plaintiff's injury, he relied on old information in violation of Plaintiff's rights.

Plaintiff alleges that Dr. Nicholes was under the training and supervision of Sacks (not a named defendant) and Bendon.

On April 6, 2004, Roberts, R.N. allegedly issued an order for Dr. Nicholes to see Plaintiff on April 7, 2004, to cast his ankle. Roberts, R.N. also ordered a pair of crutches.

On April 7, 2004, approximately four months after he notified R.N. Sheroan, Health Care Manager Bendon, Dr. Nicholes, Dr. Ortiz, Dr. Salazar, M.T.A. Sedwick, M.T.A. Hoyt, R.N. Roberts, Senior Technician Combs, Dr. Thomas, Appeals Coordinator Sylvester, Lt. Villarreal, M.T.A. Lunn, and M.T.A. Erickson (presumably of Plaintiff's difficulty obtaining medical care) "all defendants," except Dr. Thomas, allegedly fabricated and falsified the contents of Plaintiff's medical record so as to delay his medical care.

**C. CLAIMS FOR RELIEF**

   *1. Linkage Requirement*

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. See Monell v. Department of Social Services, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). In order to state a claim for relief under section 1983, Plaintiff must link each named

4

defendant with some affirmative act or omission that demonstrates a violation of plaintiff's federal rights.

The Court fails to see how Plaintiff's factual statements involving Lt. Villarreal, Technician Combs, MTA Hoyt (issuing priority passes for Plaintiff to see a physician), MTA Sedwick (advising on a Saturday that Plaintiff could not see a physician until Monday), and R.N. Roberts (issuing an order for Plaintiff to see Dr. Nicholes the next day and ordering a pair of crutches) implicate any wrongdoing. Truly, these five defendants were assisting and helpful to Plaintiff.

Further, Plaintiff fails to make any factual allegations against R.N. Sheroan, MTA Lunn, and MTA Erickson other than to include them in Plaintiff's allegation that "all defendants" fabricated and falsified the contents of his medical records. Generally grouping defendants in an allegation is insufficient to meet the linkage requirements of section 1983.

### 2. *Medical Care*

#### a. *Plaintiff's Eighth Amendment Medical Care Claim*

Plaintiff alleges that he was not provided with adequate treatment for his left ankle and that his treatment was delayed. To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). A prisoner's claim of inadequate medical care does not rise to the level of an Eighth Amendment violation unless (1) "the prison official deprived the prisoner of the 'minimal civilized measure of life's necessities,'" and (2) "the prison official 'acted with deliberate indifference in doing so.'" Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002) (citation omitted)). A prison official does not act in a deliberately indifferent manner unless the official "knows of and disregards an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 834 (1994). Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment," or in the manner "in which prison physicians provide medical care." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997)

1  (en banc).  Where a prisoner is alleging a delay in receiving medical treatment, the delay must
2  have led to further harm in order for the prisoner to make a claim of deliberate indifference to
3  serious medical needs.  McGuckin, 974 F.2d at 1060 (citing Shapely v. Nevada Bd. of State
4  Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985)).

5        Plaintiff's allegations are insufficient to give rise to a claim for relief under section 1983
6  for violation of the Eighth Amendment.  "Deliberate indifference is a high legal standard."
7  Toguchi, 391 F.3d at 1060.  "Under this standard, the prison official must not only 'be aware of
8  the facts from which the inference could be drawn that a substantial risk of serious harm exists,'
9  but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer, 511 U.S. at 837).
10 "'If a prison official should have been aware of the risk, but was not, then the official has not
11 violated the Eighth Amendment, no matter how severe the risk.'" Id. (quoting Gibson v. County
12 of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)).

13       Plaintiff's assertion that he should have been referred to an expert is without merit.  "A
14 difference of opinion between a prisoner-patient and prison medical authorities regarding
15 treatment does not give rise to a s 1983 claim," Franklin v. Oregon, 662 F.2d 1337, 1344 (9th
16 Cir. 1981) (internal citation omitted), and a difference of opinion between medical personnel
17 regarding treatment does not amount to deliberate indifference.  Sanchez v. Vild, 891 F.2d 240,
18 242 (9th Cir. 1989).  To prevail, Plaintiff "must show that the course of treatment the doctors
19 chose was medically unacceptable under the circumstances . . . and . . . that they chose this
20 course in conscious disregard of an excessive risk to plaintiff's health." Jackson v. McIntosh, 90
21 F.3d 330, 332 (9th Cir. 1986) (internal citations omitted).

22       Plaintiff has not alleged facts that support a claim that any of the named defendants
23 "[knew] of and disregard[ed] an excessive risk to [plaintiff's] health . . . ." Farmer, 511 U.S. at
24 837.  Plaintiff concedes that each time he presented to the medical clinic he was examined by
25 medical personnel.  He further concedes that he was prescribed x-rays, confinement to his cell,
26 crutches, application of an Ace bandage, pain medication, and was directed to elevate his left
27 ankle.  There is no allegation that he was ever denied treatment.  As stated in the Court's prior
28 findings and recommendation, Plaintiff's main contention is that his injury was serious and thus,

he should have been referred to an "expert" qualified to treat him.  This contention, however, indicates a disagreement with the course of treatment chosen by the attending physicians and is an insufficient basis on which to impose liability on the defendants.  Further, if the Court were to interpret Plaintiff's claim as being that he was provided untimely medical care and/or that his medical care was somehow delayed, Plaintiff has failed to allege any further harm that he sustained as a result of the delay. See  McGuckin, 974 F.2d at 1060 (citing Shapely v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985)).

Plaintiff has failed to allege anything more than a difference of opinion between himself and the prison medical staff regarding his diagnosis, treatment and medical records.  See Estelle v. Gamble 429 U.S. 97, 107 (1976).

Thus, Plaintiff fails to state a claim against any of the named defendants for deliberate indifference to his serious medical needs in violation of his Eighth Amendment Rights.

### 3. Supervisory Liability

Plaintiff names PVSP Health Care Manager Bendon, Appeals Coordinator Sylvester, and Lt. Villarreal as defendants.  It appears to the Court that Plaintiff is attempting to hold these three defendants liable based on their supervisorial activities/duties.

Supervisory personnel are generally not liable under Section 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), *cert. denied*, 442 U.S. 941 (1979).  To state a claim for relief under Section 1983 based on a theory of supervisory liability, Plaintiff must allege some facts that would support a claim that supervisory defendants: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (*internal citations omitted*); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).  Although federal pleading standards are broad, some facts must be

alleged to support claims under section 1983.  See <u>Leatherman v. Tarrant County Narcotics Unit</u>, 507 U.S. 163, 168 (1993).

Plaintiff has not stated a claim for relief based on a violation of his Eighth Amendment rights.  Thus, there is no underlying constitutional violation on which to base a claim of supervisory liability.   Further, even if Plaintiff sufficiently alleged a cognizable claim against any of the defendants, Plaintiff fails to link Manager Bendon, Coordinator Sylvester, or Lt. Villarreal to any act or omission and thus, fails to state sufficient facts on which to base a claim of supervisory liability.

**D. CONCLUSION AND RECOMMENDATION**

Based on the foregoing, the Court finds that Plaintiff has failed to state a claim for relief under section 1983.  Further, the Court finds that the deficiencies outlined above are not capable of being cured by amendment, and therefore leave to amend should not be granted.  28 U.S.C. § 1915(e)(2)(B)(ii); <u>Noll v. Carlson</u>, 809 F. 2d 1446, 1448-49 (9th Cir. 1987).  Accordingly, the Court RECOMMENDS that this action be dismissed in its entirety.

It is HEREBY ORDERED that these Findings and Recommendations be submitted to the United States District Court Judge assigned to the case pursuant to the provision of 28 U.S.C. § 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within THIRTY (30) days after being served with a copy of this Report and Recommendation, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Replies to the Objections shall be served and filed within TEN (10) <u>court</u> days (plus three (3) days if served by mail) after service of the Objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).

The parties are advised that failure to file objections within the specified time may waive the right to appeal the Order of the District Court.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   May 12, 2008**            _____/s/ Gary S. Austin_____
                                     UNITED STATES MAGISTRATE JUDGE